IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUNIPER NETWORKS, INC., <br><br> Plaintiff, <br><br> v. <br><br> JUNIPER MEDIA, LLC, <br><br> Defendant. | No. C 11-03906 WHA <br><br> **ORDER DENYING MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND VENUE OR, ALTERNATIVELY, TO TRANSFER** |

### INTRODUCTION

In this action for trademark infringement, dilution, cybersquatting and unfair competition, defendant moves to dismiss for lack of personal jurisdiction and improper venue or, in the alternative, transfer venue. For the reasons stated below, defendant's motion is **DENIED**.

### STATEMENT

Plaintiff Juniper Networks is a Delaware corporation with its principal place of business in Sunnyvale. Plaintiff is a multi-billion dollar software development and marketing company. Plaintiff provides network management products and related services to institutional and other commercial consumers. Plaintiff owns the rights to the registered JUNIPER NETWORKS trademark for computer software and related consulting and repair services, and asserts common law trademark rights in the name and mark JUNIPER (Compl. ¶¶ 3, 7–11, 14–16).

Defendant Juniper Media is a Florida limited liability company (Schaeffer Decl. ¶ 2). Defendant competes with plaintiff in the computer software arena. Specifically, defendant offers

software analysis and evaluations to both buyers and sellers in the technology market. Defendant began operations in 2010. A year later, defendant filed an application with the United States Patent and Trademark Office to register the name and mark JUNIPER MEDIA for computer services (Walker Decl. Exh. 2). At the time of plaintiff's filing of this action, several online sources, including defendant's own website, stated defendant's location or headquarters as California. Defendant's site also listed a 415 area code (Walker Decl. Exh. 12).

On August 9, 2011, plaintiff filed this action in this district, alleging trademark infringement, false designation of origin, trademark dilution and cybersquatting under the Lanham Act, unfair competition under California Business & Professions Code Section 17200, trademark dilution under California Business & Professions Code Section 14247, and common law trademark infringement and unfair competition. Defendant moves to dismiss for lack of personal jurisdiction and improper venue or, in the alternative, transfer venue.

**ANALYSIS**

**1. PERSONAL JURISDICTION.**

"For a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 801 (9th Cir. 2004). California's long-arm statute authorizes jurisdiction on any basis not inconsistent with the state or federal Constitutions. CAL. CODE CIV. PROC. § 410.10.

Plaintiff has the burden of establishing the existence of jurisdiction. Where defendant's motion is based on written materials rather than an evidentiary hearing, plaintiff need only make a *prima facie* showing of jurisdictional facts. "Uncontroverted allegations in the complaint must be taken as true." While allegations in a pleading that are contradicted by affidavit may not be assumed as true, factual disputes are resolved in plaintiff's favor. *Schwarzenegger*, 374 F.3d at 800.

Personal jurisdiction may be either general or specific to the allegations in the complaint. *Id.* at 801–02. Specific jurisdiction exists when the suit arises out of or is related to the

1  defendant's contacts with the forum state.  Our court of appeals applies a three-element test for
2  analyzing claims of specific jurisdiction:

3      1.    The non-resident defendant must purposefully direct his activities
4  or consummate some transaction with the forum or resident thereof; or perform
5  some act by which he purposefully avails himself of the privilege of conducting
6  activities in the forum, thereby invoking the benefits and protection of its laws;

7      2.    The claim must be one which arises out of or relates to the
8  defendant's forum-related activities; and

9      3.    The exercise of jurisdiction must comport with fair play and
10  substantial justice, *i.e.*, it must be reasonable.

11  *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1227–28 (9th Cir. 2011).  If plaintiff
12  succeeds in satisfying both of the first two elements, the burden shifts to defendant to "set forth
13  a compelling case" that the exercise of jurisdiction would not be reasonable.  *Id.* at 1228.

14      **A.**    **Purposeful Direction.**

15  For trademark infringement cases, our court of appeals typically inquires whether the
16  defendant "purposefully directs" activities at the forum state by utilizing the "effects test."
17  Under this test, "the defendant allegedly must have (1) committed an intentional act,
18  (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely
19  to be suffered in the forum state."  *Mavrix,* 647 F.3d at 1228.

20  An intentional act refers to an "actual, physical act in the real world."  Creation and
21  operation of a website has been held to easily satisfy the "intentional acts" requirement.
22  *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128–29 (9th Cir. 2010).
23  The first prong is thus met.

24  The second requirement is that the intentional act be "expressly aimed" at the forum
25  state.  Where a defendant's activities are restricted to cyberspace, our court of appeals requires
26  "something more" than maintenance of a passive website.  *Mavrix,* 647 F.3d at 1229.
27  The existence of "something more" has been determined on the basis of "interactivity of the
28  defendant's website, the geographic scope of the defendant's commercial ambitions, and whether

3

1  the defendant 'individually targeted' a plaintiff known to be a forum resident." *Ibid.*
2  Infringement of intellectual property rights via the web, for the purpose of competing in the
3  forum, is sufficient to constitute individual targeting. *CollegeSource, Inc., v. AcademyOne, Inc.*,
4  653 F.3d 1066, 1077 (9th Cir. 2011).

5  Prior to plaintiff's filing of this action, a LinkedIn profile for defendant listed its
6  headquarters as Los Gatos. Third-party LinkedIn profiles for Bay Area residents represented
7  defendant as their employer. Defendant's Twitter account listed Los Angeles as the origin of
8  its "feed." *Defendant's own website listed headquarters a primary contact phone number with a*
9  *415 area code and headquarters in Los Angeles*. Press releases available on defendant's website
10 stated a relevant location as San Jose. Additionally, the "fact sheet" portion of defendant's
11 website listed its headquarters in California (Walker Decl. ¶¶ 3–8, 10–13).

12 Defendant does not contest that its website touted "extensive media experience and
13 long-standing business relationships with many key influencers in the blogosphere and social
14 Web." This statement was accompanied by a list of popular social media companies including
15 YouTube, Facebook, Twitter, and Google (Walker Exh. 16). Defendant admits its CEO attended
16 a conference in San Francisco but states that he did so solely for educational purposes. Given
17 the nature of its services, defendant is undoubtedly cognizant of the technology market's
18 concentration in California's "Silicon Valley." Intentionally creating an aura of local presence
19 is sufficiently encouraging to residents to constitute purposeful direction.

20 Since the filing of plaintiff's complaint, defendant has revised its website.
21 Specifically, defendant has removed the 415 contact number, changed its headquarters
22 location to Boca Raton, Florida, and removed references to information technology and "IT"
23 (Walker Decl. ¶¶ 4, 13–14, 22).

24 Furthermore, defendant did not merely register a domain name and post a website.
25 Defendant promoted its services "through the same trade channels and to the same customer
26 base as [plaintiff]," in direct competition therewith (Compl. ¶¶ 29, 31). Plaintiff further alleges
27 defendant willfully infringed plaintiff's trademarks and domain names. In support of this
28 contention, plaintiff points to the relative fame of its own mark, the similarity of defendant's

4

name and mark, and the proximity of the parties' services. Plaintiff's allegation is that defendant's actions were "clearly and specifically aimed at [plaintiff]" (Opp. 10). These allegations constitute individualized targeting sufficient to meet our court of appeals' "something more" requirement.

In response to plaintiff's several factual allegations, defendant states it "has not conducted any activities in California or purposely directed its activities toward California," and "has never had any employees in California." Defendant further argues it "has never had a contact number in the 415 area code," which it claims appeared on the site erroneously. Defendant also attests it "does not have any Twitter feeds based in California" (Schaeffer Decl. ¶¶ 6–8). Defendant's semantics lack substance. A finding of personal jurisdiction does not require defendant's having *actually* posted to Twitter from Los Angeles, or maintained a physical headquarters in California — only that defendant *represented itself* as having done so for its own commercial gain (Opp. at 9). The "expressly aimed" prong of the test has been satisfied.

The final prong of the "effects test" — causing harm that defendant knows is likely to be suffered in the forum state — is also met. Plaintiff alleges defendant "purposefully and intentionally sought to trade-off [sic] the goodwill of [plaintiff], including in this District, where defendant has had offices and employees, attended tradeshows, and actively promoted [defendant]'s mark and name." Plaintiff further alleges defendant "must have known that [plaintiff] would feel the most significant harm in this District," where plaintiff's principal place of business is located (Opp. 10). Accordingly, all three elements are met.

### B. Connection to Forum-Related Activities.

To satisfy the second element of the specific jurisdiction test, plaintiff must show that its claims arise out of or relate to defendant's forum-related activities. In making this determination, our court of appeals inquires whether plaintiff would have been injured *but for* defendant's conduct directed towards the forum state. *Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). Our court of appeals has held registration of infringing trademarks and domain names sufficient to meet the forum-related prong of the "effects test," where those actions "had

5

the effect of injuring [plaintiff] in California." *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998).

Defendant maintains that it has not conducted business within the state of California and that none of the activities alleged by plaintiff "occurred in California" (Br. 9).  As detailed above, the present action arises out of defendant's alleged attempts to trade off the plaintiff's goodwill (Opp. 10).  Defendant directly competed with plaintiff's computer-networking related services  (Compl. ¶ 29).  It is well known that the heart of the computer technology industry is in California.  Plaintiff, a California-based company, was undoubtedly harmed by defendant's attempt to syphon the goodwill of plaintiff's name, and the suggestion of Silicon Valley. Plaintiff has met its burden of a *prima facie* showing that its claims arise from defendant's forum-related activities.

**C.     Reasonableness.**

Because plaintiff has satisfied the first two elements of the specific jurisdiction inquiry, the burden now shifts to defendant to "'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Schwarzenegger*, 374 F.3d at 802.  Reasonableness is assessed by weighing seven factors:

1.     The extent of defendant's purposeful interjection into the forum state's affairs;

2.     The burden on defendant of litigating in the forum;

3.     The extent of conflict with the sovereignty of defendant's state;

4.     The forum state's interest in adjudicating the dispute;

5.     The most efficient judicial resolution of the controversy;

6.     The importance of the forum to plaintiff's interest in convenient and effective relief; and

7.     The existence of an alternative forum.

*Bancroft & Masters, Inc. v. Augusta Nat'l. Inc.*, 223 F.3d 1082, 1088 (9th Cir. 2000). To overcome clear justifications for the exercise of jurisdiction, defendant must illustrate that the

"inconvenience is so great as to constitute a deprivation of due process." *Panavision*, 141 F.3d at 1323.

Defendant has not met its burden of showing that the exercise of specific jurisdiction would be unreasonable. *First*, the degree of defendant's interjection into California weighs in favor of finding personal jurisdiction. While defendant states it "has not conducted activities in California or otherwise purposefully interjected itself into this forum," this order has already determined that defendant knowingly directed its actions at plaintiff, a forum resident. *Second*, as defendant correctly states, there is no conflict in interstate sovereignty. *Third*, California has an interest in adjudicating the trademark infringement claims of its residents. *Fourth,* while defendant's evidence and witnesses may be located in South Florida, plaintiff contends that its relevant evidence and witnesses are located in California. This factor is thus neutral. *Fifth*, plaintiff has demonstrated an interest in adjudicating in California, where its primary offices are located. Defendant has not demonstrated how the burden of litigating in this district outweighs the general presumption in favor of plaintiff's choice of forum.

Only two factors — the availability of an alternate forum, and the potential burden of litigation in California — weigh in defendant's favor. The latter nudges the scale only slightly.

Plaintiff established the first two elements of the specific jurisdiction inquiry, and defendant has not met its burden of presenting a "compelling case" that the exercise of jurisdiction is unreasonable. Because this order finds specific jurisdiction proper, it need not reach defendant's argument that general jurisdiction is lacking. Accordingly, defendant's motion to dismiss for lack of personal jurisdiction is **DENIED**.

**2. MOTION TO DISMISS FOR IMPROPER VENUE**.

Defendant next moves to dismiss all claims for improper venue. Plaintiff's claims are subject to the general venue statute. 28 U.S.C. 1391(b)(2) provides that "[a] civil action wherein jurisdiction is not founded solely on diversity of citizenship" may be brought in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." In evaluating venue in trademark infringement cases involving internet transactions, courts look to whether a defendant could be said to have "entered" the district in a way that would create

7

1  confusion for plaintiff's customers. *Adobe Sys. Inc. v. Childers*, No. 10-cv-03571, 2011
2  WL 566812, at *8 (N.D. Cal. Feb. 14, 2011) (Fogel, J.).

3  In light of the above analysis, defendant has "entered" this district. Defendant's
4  purposeful targeting of the plaintiff in this forum is likely to cause confusion among the parties'
5  shared customer base.

6  Plaintiff has thus shown venue to be proper as to all claims. Accordingly, defendant's
7  motion to dismiss for improper venue is **DENIED**.

8  **3. MOTION TO TRANSFER VENUE.**

9  Defendant moves in the alternative to transfer this action to the Southern District of
10 Florida pursuant to 28 U.S.C. 1404(a). Section 1404(a) states in pertinent part: "[F]or the
11 convenience of the parties and witnesses, in the interest of justice, a district court may transfer
12 any civil action to any other district or division where it might have been brought." The district
13 court must consider both private factors concerning the convenience of the parties and witnesses
14 and public factors concerning the interest of justice. *Decker Coal Co. v. Commonwealth*
15 *Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

16 **A. Private Factors.**

17 The district court must consider private convenience and fairness factors, including ease
18 of access to sources of proof, plaintiff's choice of forum, relative convenience to parties, and
19 relative convenience to witnesses.

20 The first factor concerns location of sources of proof. This factor is neutral, as addressed
21 above. Although defendant claims that its principal place of business is in Florida, where
22 its witnesses and evidence are located, modern document storage and delivery reduce any
23 burden presented. Defendant further contends that the Southern District of Florida would be
24 better suited to address discovery-related issues, such as compulsion of unwilling witnesses.
25 But defendant has thus far identified only one witness — its sole member (Br. 17). It would not
26 be a heavy burden to compel the attendance of one person with a vested interest in this action.

27 The next factor is plaintiff's choice of forum. Defendant has not overcome the general
28 presumption in favor of plaintiff's choice of forum. This factor thus weighs against transfer.

8

The third factor is the convenience of parties and witnesses. Defendant claims that its sole employee would be burdened by litigation in California, but does not specifically address any other witnesses (Br. 10). Instead, defendant merely states that a transfer to South Florida would not "result in any *significant* inconvenience to plaintiff" (*id.* at 18) (emphasis added). It would of course be more convenient for defendant corporation, comprised of a single employee, to litigate in Florida. On the other hand, plaintiff asserts that many of its potential witnesses are located at its headquarters in California (Opp. 16). Defendant fails to illustrate how a transfer of venue would not merely transfer defendant's inconvenience to plaintiff. The private factors weigh against transfer.

### B. Public Interest Factors.

The district court must also consider public interest factors such as relative degree of court congestion, local interest in deciding local controversies, potential conflicts of laws, and burdening citizens of an unrelated forum with jury duty. Defendants moving to transfer an action bear the burden of making a strong showing of inconvenience. *Decker Coal*, 805 F.2d at 843. Such showing has not been made. This district bears a relationship to the controversy, and has an interest in adjudicating the claims of its citizens. Furthermore, a transfer of venue is likely to result in delay.

Defendant fails to demonstrate any public interest reason supporting its motion to transfer venue, other than to state that transfer would "best serve the interest of justice." This is insufficient to meet its burden of a "strong showing." Accordingly, defendant's motion to transfer the action pursuant to 28 U.S.C. 1404(a) is **DENIED**.

### CONCLUSION

For all of the above stated reasons, defendant's motion to dismiss for lack of personal jurisdiction and improper venue or, alternatively, to transfer venue is **DENIED.**

**IT IS SO ORDERED.**

Dated: January 17, 2012.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE

9